

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 APR -4  P 12: 06

CLERK'S OFFICE
AT BALTIMORE

| | | |
|---|---|---|
| Mark W. Crooks<br>Assistant United States Attorney<br>Mark.Crooks@usdoj.gov | Suite 400<br>36 S. Charles Street<br>Baltimore, MD 21201-3119 | DIRECT: 410-209-4867<br>BY MAIN: 410-209-4800<br>FAX: 410-962-0716 |

April 1, 2014

Mr. Brendan Hurson, Esq.
Office of the Federal Public Defender, District of Maryland
100 South Charles Street
Tower II, Suite 900
Baltimore, MD 21201

Re:   United States v. Donald Taylor

Dear Mr. Hurson:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by April 7, 2014, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offenses of Conviction

1.   The Defendant agrees to plead guilty to waive indictment and plead guilty to a Criminal Information which will charge him with Misdemeanor Bank Larceny, in violation of 18 U.S.C. §§ 2113(b) and 2. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

(Aiding and Abetting)
BH

### Elements of the Offense

2.   The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are enumerated below.

   a.   First, that on April 28, 2013, M&T Bank was a federally insured bank;

   b.   Second, that the Defendant aided and abetting the taking and carrying away of money which had been in the possession or care of the bank;

c.      Third, that the Defendant acted intentionally, knowing that he was not entitled to the money; and

d.      Fourth, that the money the Defendant took had a value less than $1,000.

### Penalties

3.      The maximum sentence provided by statute for the Class A misdemeanor to which the Defendant is pleading guilty is as follows: one year imprisonment, a $100,000 fine and 1 year of supervised release. In addition, the Defendant must pay $25.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that, after he serves a term of imprisonment and is released and on supervised release, if he violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      Had the Defendant not agreed to waive indictment and plead guilty to the Information, he would have had the right to have his case presented to a grand jury which would have determined whether or not there was probable cause to charge him with a crime. Had the jury voted an indictment, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and understands that the charges will be filed by the United States Attorney without the Grand Jury.

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

c.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have had the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

d.  If the Defendant went to trial, the government would have had the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

e.  The Defendant would have had the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

f.  If the Defendant were found guilty after a trial, he would have had the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal a verdict and the Court's decisions.

g.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

h.  If the Court accepts the Defendant's plea of guilty, there will be no further grand jury, trial or proceeding of any kind, and the Court will find him guilty.

i.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights. The Defendant recognizes that *if* he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Further, by pleading guilty, the Defendant may face other collateral consequences as a result of his conviction including, but not limited to, the loss of his security clearances or the inability to own

or carry firearms or restrictions on travel. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential collateral consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable Sentencing Guidelines factors:

a. The base offense level is 6 pursuant to U.S.S.G. § 2B1.1(a)(2).

b. Increase by 2 levels because the loss was greater than $5,000 but less than $10,000. U.S.S.G. § 2B1.1(b)(1)(B).

c. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

Thus, the final adjusted offense level is 6.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors,

potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

9. At the time of sentencing, this Office will recommend a sentence within the Guidelines determined by the Court.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Dismissal of Related State Case Charges

11. This Office represents that the Baltimore County State's Attorney's Office has agreed to dismiss the charges/case pending against the Defendant related to conduct described in Attachment A, the Statement of Facts.

### Restitution

12. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses, for which he shall be jointly and severally liable with the persons named in Attachment A and anyone else subsequently convicted for related conduct. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual and total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Collection of Financial Obligations

13. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

14. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the

Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

15. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

## Waiver of Appeal

16. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives his rights, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: the Defendant and this Office reserves the right to appeal any sentence not within the Advisory Guidelines determined by the Court.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

17. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any

offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

18.  The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19.  This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: *[signature]*

Mark W. Crooks
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

4-3-2014
Date

*Donald R. Taylor*
Donald Taylor

I am Donald Taylor's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

4-3-2014
Date

*[signature]*
Brendan Hurson, Esq.

**Attachment A: Factual Stipulation**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 APR -3 PM 12:06

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

If this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt. The Defendant agrees that the following facts are true and do not encompass all of the facts that would have been proven had this matter proceeded to trial.

Donald Taylor ("TAYLOR"), age 57, is a resident of Baltimore City. TAYLOR has a substantial drug addiction.

On April 28, 2013, TAYLOR served as a lookout while Aaron Davis and Kenneth Manns burglarized the Edmondson Sunoco gas station located at 6122 Edmondson Avenue, Catonsville, Maryland. TAYLOR drove a Dodge Caravan rented by Manns and followed Manns and Davis, who were traveling in a stolen U-Haul vehicle.

Shortly before midnight, they traveled to the Sunoco, where Davis and Manns broke a side glass window, entered the store and severed phone, cable and alarm power lines inside (including the one that links the ATM machine to M&T Bank, a federally-insured bank). Meanwhile, TAYLOR continued to serve as a lookout from inside the Caravan.

After going behind the cashier area, Davis and Manns left the Sunoco and drove away from the gas station in TAYLOR's vehicle. TAYLOR drove Manns and Davis to Regent Park Road and Harlem Road, where they waited for nearly hour. At approximately 1:50 a.m., TAYLOR, Davis and Manns returned to the Sunoco, where Davis and Manns re-entered the gas station, attempted to gain entry into the interior manager's office and then left the store again. TAYLOR, Davis and Manns next traveled in the Caravan to Wheeler Avenue and Walbrook Avenue and again remained stationary for a little less than an hour.

At approximately 3:15 a.m., Davis and Manns returned to the Sunoco gas station a third time and re-entered the gas station while TAYLOR again served as a lookout in the Caravan, parking at the corner of Harlem Lane and Edmonson Avenue. Manns and Davis stole $200.00 from the cash register drawer and removed 2 store safes using a handcart, containing $8980. They loaded the safes into the U-haul van and drove away, while TAYLOR followed them in the Caravan. Police followed the U-Haul van to 4020 Essex road, at which point, Davis and Manns fled from the police on foot. The above described safe was found inside the U-Haul van. TAYLOR was stopped by police officers while driving the Dodge Caravan at Alter Street and Danlou Drive. Manns was arrested a short time later while hiding in his tan van. TAYLOR was paid fifty-dollars to serve as the lookout.

On April 30, 2013, the above described Chevy tan van was searched by members of the Baltimore County Police Department. Inside the van, they found 5 bags of burglary tools, numerous vise grips and power cords.

Agreed to on April 3, 2014:

Donald R. Taylor
Donald Taylor

1